IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTUS CHESTNUT | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 06-4921 |
| GENERAL MOTORS CORPORATION | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

AND NOW comes Plaintiff, by and through his undersigned counsel, and files this Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment:

**I.  Introduction**

Plaintiff (an African-American male) has been employed by Defendant as a Millwright Mechanic since 1979. In May, 2004, Plaintiff filed a Charge of Discrimination with the EEOC alleging that he was denied overtime that was allowed to a similarly-situated, Caucasian Millwright. That matter was eventually resolved, and Plaintiff was paid more than $9,000.00 in overtime wages. At the time of the resolution, Plaintiff was assured that he would be permitted to work the same hours (ten hours per day) as other non-production workers on his shift. Defendant reneged on that promise, and refused to permit Plaintiff to work overtime hours that are allowed to other workers on his shift, as well as to the Caucasian Millwright on the first shift.

**II.  Factual Background**

Plaintiff, an African-American male, was hired by Defendant as a Millwright on November 12, 1979. (Deposition of Justus Chestnut, attached hereto as Exhibit "A", at pp. 35,

39, 57). At all times during his employment with Defendant, Plaintiff has been a member of the United Auto Workers Local 2177. (Exhibit "A", at p. 37). Plaintiff's job responsibilities with Defendant include repairing and maintain the mechanical equipment in Defendant's facility, including conveyor systems, cranes, dock plates, and dock doors. (Exhibit "A", at pp. 40-41). In 2002, Plaintiff was transferred to Defendant facility in Langhorne, PA. (Exhibit "A", at p. 37).

In April 2004, Plaintiff exercised his seniority with the union to transfer from the first shift to the second shift. (Exhibit "A", at p. 98). In doing so, Plaintiff effectively switched shifts with James Krupa, a Caucasian, and the only other Millwright at the facility. (Exhibit "A", at pp. 76, 99, 123). Plaintiff exercised this right because he believed that his supervisor, Curt Simon, was requiring Plaintiff to perform the work assigned for both shifts. (Exhibit "A", at pp. 99-100).

While the first shift was eight (8) hours long, the second shift was a ten (10) hour schedule. (Exhibit "A", at pp. 102, 104). During the first week that he was assigned to the second shift, Plaintiff accrued several hours of overtime as a result of the difference in shift length. (Exhibit "A", at pp. 102-103).

Immediately following his transfer to the second shift, Plaintiff was denied the ability to work overtime that was permitted to other employees. All of the other non-production employees in the facility were permitted to work ten hours on the second shift. (Exhibit "A", at p. 104). However, Plaintiff was instructed that he could not work any overtime, and was sent home every night after only eight hours of work. (Exhibit "A", at pp. 106, 112). Plaintiff filed a grievance with his union over this issue (Exhibit "A", at p. 107), and also filed a Charge of Discrimination with the EEOC, alleging race discrimination. (*See* Charge of Discrimination, attached hereto as Exhibit "B").

Following the filing of Plaintiff's first Charge of Discrimination, Plaintiff was paid $9,514.00 for lost hours. (Exhibit "A", at p. 107). Following this settlement, Plaintiff was told by Robert Pasquale, his union chairman that Bob Cramer, the Plant Personnel Director, would allow Plaintiff to work the same overtime hours as all of the other non-production workers. (Exhibit "A", at pp. 117, 146). However, despite the settlement reached, and despite the promise of Mr. Cramer, Defendant continued to refuse to Plaintiff to work more than eight hours per day. (Exhibit "A", at p. 147).

While Plaintiff was not permitted to work overtime on the second shift, Mr. Krupa was being permitted to work overtime on the first shift. (Exhibit "A", at p. 125). Prior to his move to the second shift, Plaintiff was not permitted to work *any* overtime. (Exhibit "A", at p. 125). In the rare cases that Plaintiff did received overtime, it was directly related to the planned maintenance program. (Exhibit "A", at p. 128). On the other hand, Mr. Krupa was getting overtime on a regular basis. (Exhibit "A", at p. 128). This overtime was given for jobs are routine as to grease a cart or fix a table, tasks that could easily wait until the following shift. (Exhibit "A", at p. 128).

Both Plaintiff and Mr. Krupa are supervised by the same people. (Exhibit "A", at p. 124). In addition, Defendant has conceded that Mr. Krupa was permitted to work overtime while he was assigned to the second shift. (Exhibit "A", at pp. 109-110). While Defendant attempts to describe this overtime as "project work", Plaintiff testified that he has seen the term applied to "quite a few different things". (Exhibit "A", at p. 111).

On or about March 9, 2006, Plaintiff filed a second Charge of Discrimination with the EEOC, in which he claimed that Defendant was still discriminating against him in the allocation

of overtime, and also that Defendant was retaliating against Plaintiff for filing his initial EEOC Complaint. (2nd Charge of Discrimination, attached hereto as Exhibit "C").

III. **Legal Argument**

   a. *The Standard for Summary Judgment*

Federal Rule of Civil Procedure 56 and the authorities interpreting it have set a high standard for the granting of summary judgment – a standard Defendant simply cannot satisfy.

Pursuant to Fed.R.Civ.P. 56(c) summary judgment is appropriate only in cases "… where there is no genuine issue of material fact for the jury to decide." *Coolspring Stone Supply v. American States Life Ins. Co.*, 10 F.3d 144, 148 (3rd Cir. 1993). Summary judgment may be granted only when there is no dispute as to an issue of material fact and the moving party is entitled to judgment as a matter of law. In response to a motion for summary judgment, the nonmoving party must demonstrate the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986). The burden always remains on the moving party, however, to show that a rational trier of fact could not find for the non-moving party and that there is thus no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986). Defendant cannot meet that burden.

In ruling on a motion for summary judgment, the Court must accept and believe the evidence of the non-moving party (herein, the Plaintiff) as true, and must not weigh or consider the credibility of witnesses. *Anderson, supra*, 477 U.S. at 248-52. The non-moving party's evidence must be believed as true on summary judgment, and any and all doubts must be resolved in that party's favor. *Eastman Kodak Co. v. Image Technological Services, Inc.*, 504 U.S. 451, 456, 112 S. Ct. 2072, 2076 (1992). On summary judgment, where the non-moving party's evidence contradicts the movant's evidence, then the non-movant's evidence must be

taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3rd Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S. Ct. 1262 (1993).

As will be demonstrated *infra*, Plaintiff has adduced ample evidence to allow his claims to proceed to trial.

### b. *Plaintiff has Properly Exhausted his Administrative Remedies*

As Plaintiff has filed a timely charge of discrimination and retaliation with the EEOC and has filed his Federal Complaint within ninety days of receipt of the Notice of Right to Sue, Plaintiff has properly exhausted his administrative remedies as to all claims of his Complaint.

"The jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue." *Ostapowicz v. Johnson Bronze Company*, 541 F.2d 394, 398 (3rd Cir. 1976). In this matter, there can be no claim that Plaintiff has failed to comply with either of these prerequisites. On or about March 9, 2006, Plaintiff filed a Charge of Discrimination and Retaliation with the Philadelphia office of the EEOC. (*See* Exhibit "C"). That charge states, in relevant part:

> (c) On or about May 5, 2004, the Complainant filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission based on his belief that he was being subjected to race discrimination in connection with the terms, conditions, and privileges of his employment.
>
> (d) In connection thereto, the Complainant believed and averred at that time that he was being systematically denied overtime shifts due to his race.
>
> (e) Subsequent to filing the aforesaid Charge of Discrimination, the Complainant reached a settlement with the Respondent, via his union representative, for compensation lost due to being denied the right to work the aforesaid overtime hours.

> (f) Notwithstanding the aforesaid settlement, the Complainant has systematically and continuously to the present date, been denied the right to work overtime, in the same manner he was denied previously by the Respondent.

Exhibit "C", at p. 2. As noted above, Plaintiff alleged that he was being denied overtime "*in the same manner*" as he was previously denied overtime, *i.e.* due to his race. Accordingly, Plaintiff's EEOC Charge properly set forth a claim for race discrimination. In addition, there can be no dispute that Plaintiff properly stated a claim for retaliation in his EEOC Charge: "The Respondent's refusal to offer the Complainant overtime hours, in the manner in which other similarly situated employees are being offered such work, is retaliation for him having previously filed a Charge of Discrimination with the EEOC as aforesaid." (Exhibit "C", at p. 2). In light of the clear language of Plaintiff's EEOC Charge, Defendant cannot establish that Plaintiff failed to properly file charges with the EEOC.

With regard to any allegation that Plaintiff failed to file his Complaint with the Court within the applicable statute of limitations, such an allegation would be without any merit. In Paragraph 5 of its Answer, Defendant states:

> Answering paragraph 5 of plaintiff's Complaint, GM admits only on information and belief that the Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights dated September 5, 2006 with respect to Charge No. 530-2006-00793 and that plaintiff filed this lawsuit within ninety (90) days of September 5, 2006, and denies the remaining allegations contained therein.

Answer, attached hereto as Exhibit "D", at ¶ 5). As Defendant has admitted that the Federal Complaint was timely filed, it cannot now contest this issue, and its motion must be denied as to this claim.

### c. *Plaintiffs can Establish a Prima Facie Case of Discrimination*

Plaintiff has adduced sufficient evidence through discovery to establish a *prima facie* case of race discrimination.[1]

> To establish a prima facie case of national origin discrimination, the plaintiff must show: (1) he is a member of a protected class; (2) he was qualified to perform his job; (3) he suffered an adverse employment action; and (4) the adverse employment action was taken under circumstances that give rise to an inference of unlawful discrimination.

*Clarke v. The Kintock Group*, 2006 U.S. Dist. LEXIS 13709 (E.D. Pa.), *citing Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3rd Cir. 2003). In this matter, there can be no dispute that Plaintiff can establish that he is a member of a protected class (African-American) or that he was qualified to perform his job (he has been employed by Defendant since 1979). A reduction in overtime is a material adverse job action linked to compensation. *See Albright v. City of Philadelphia*, 399 F.Supp. 2d 575, 587 (fn. 20) (E.D. Pa. 2005) (Brody, J.). In addition, as Plaintiff has identified a similarly-situated Caucasian employee who was treated in a more favorable manner, Plaintiff has established a *prima facie* case of race discrimination. *See Williams v. Bala Retirement and Nursing Center*, 2007 U.S. Dist. LEXIS 54593, *17 (E.D. Pa. 2007) (Pratter, J.) ("The evidence that [the defendant] treated a similarly situated Caucasian employee more favorably than [the plaintiff] may in some circumstances be sufficient to prove that a discriminatory reason was more likely than not the reason for [the defendant's] action.")

Plaintiff has testified that, prior to his "bump" to second shift, James Krupa was regularly given overtime hours. However, upon Plaintiff's transfer to that shift, Plaintiff was not permitted to work any overtime, unless there was a specific project on which he was working. Plaintiff

---

[1] Plaintiff's claims of race discrimination under Title VII and § 1981 are subject to the same analytical framework and, as such, will be combined under the same analysis herein. *See e.g., Harley v. McCoach*, 928 F. Supp. 533, 538 (E.D. Pa. 1996) (Joyner, J.)

also testified that all other non-production employees on the second were permitted to work ten (10) hour shifts, while Plaintiff was only permitted to work an eight (8) hour shift, despite the availability of work. Such facts are sufficient to establish that Plaintiff was treated less favorably than a similarly-situated Caucasian employee.

Now that Plaintiff has set forth a *prima facie* case of race discrimination, Defendant carries the burden to produce a legitimate, non-discriminatory reason for the adverse job action taken against Plaintiff. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 51, 124 S. Ct. 513, 518, 157 L. Ed. 2d 357, 364-5 (2003). Plaintiff's claims under Title VII and § 1981 are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*. *See Harp v. SEPTA*, 2006 U.S. Dist. LEXIS 35344, *11 (E.D. Pa.). As the Third Circuit Court of Appeals has noted:

> Briefly summarized, the *McDonnell Douglas* analysis proceeds in three stages. First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's [termination].[2] Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Jones v. School Dist. Of Philadelphia*, 198 F.3d 403, 410 (3rd Cir. 1999) (citing *McDonnell Douglas*, 411 U.S. at 802).

> [A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Thus, if

---

[2] The *McDonnell-Douglas* analysis is couched in terms of denial of promotions, but is applied in the same manner to cases where, as here, the Plaintiff claims she was terminated for a discriminatory reason. See, e.g., *Jones v. City of Wilmington*, 299 F. Supp.2d 380, 394 n. 15 (D. Del. 2004) (applying McDonnell-Douglas in a firing case).

> the plaintiff has pointed to evidence sufficiently to discredit the
> defendant's proffered reasons, to survive summary judgment the
> plaintiff need not also come forward with additional evidence of
> discrimination beyond his or her prima facie case.

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3rd Cir. 1994). In this case, Defendant has suggested that Plaintiff denied overtime due to a desire to control the amount of overtime worked by its employees. Based on the record in this matter, Plaintiff can set forth evidence that this reason was merely pretextual.

> In the absence of direct evidence of discrimination, a plaintiff may
> rely on circumstantial evidence to demonstrate such weaknesses,
> implausibilities, inconsistencies, incoherencies, or contradictions'
> in the employer's proffered legitimate reasons so as to permit a
> reasonable fact finder to infer that the employer did not act for the
> proffered reasons and instead had a discriminatory motive.

*Id.*, at *12 (internal quotations omitted).

Plaintiff has testified, and Defendant has not produced any statements or other evidence to the contrary, that other non-production workers on the second shift were permitted to work ten (10) hour shifts. Plaintiff has further testified that Bob Cramer stated that Plaintiff would be entitled to work the same ten-hour shift as other employees following the resolution of his prior EEOC charge. Finally, Plaintiff testified that there was ample work for him to do on overtime, as the Caucasian employee on the first shift always left substantial amounts of work to perform. Such facts, if believed at trial, would demonstrate serious weaknesses in Defendant's proffered reason for denying Plaintiff overtime, making summary judgment inappropriate on this issue.

Also, in its position statement to the EEOC, Defendant asserted that it denied Plaintiff overtime because he had worked twelve hours of overtime on April 5, 2004 and April 6, 2004 without prior authorization. (Defendant's Position Statement, attached hereto as Exhibit "E", at p. 3). These were the first two days after Plaintiff exercised his seniority and moved to second

shift. Accordingly, Plaintiff worked ten (10) hour shifts those days, instead of eight (8) hour shifts, and did accrue some overtime. However, to claim that Plaintiff has been denied overtime almost four years later because of this incident is so incoherent as to be unworthy of credence. In addition, as this excuse is inconsistent with the proffered reason in Defendant's motion, such inconsistency is further evidence of pretext.

### d. *Plaintiff Can Establish a Claim for Retaliation*

Because there is sufficient evidence to establish a claim for retaliation, Defendant's motion must be denied.

> To state a prima facie retaliation claim under Title VII, [plaintiff] must allege that (1) she engaged in a protected activity, (2) her employer took adverse action against her "either after or contemporaneous with [her] protected activity," and (3) "a causal connection [exists] between [her] protected activity and [her] employer's] adverse action."

*Lee v. Gecewicz*, 1999 U.S. Dist. LEXIS 7317, *12 (E.D. Pa. 1999), *citing Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500, 506 (3rd Cir. 1997).

In this matter, there can be no doubt that the first two elements of a claim for retaliation have been met. Certainly, filing a Charge of Discrimination with the EEOC constitutes protected activity under Title VII.

> Protected activities under Title VII include situations where an employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. A formal letter of complaint to an employer or the EEOC is not the only way to meet the protected activity criterion. Protected activities include formal charges of discrimination, as well as informal protests of discriminatory employment practices, including making complaints to management.

*Zelinski v. Pennsylvania State Police*, 2004 U.S. App. LEXIS 16576, *12-13 (3rd Cir. 2004) (internal citations omitted). There is no dispute in this matter that Plaintiff did file his EEOC Charge in 2004.

Second, Plaintiff can establish that he was subjected to an adverse job action, relating to the loss in overtime. The Supreme Court has recently set forth a new standard relating to retaliatory conduct under Title VII. In *Burlington Northern and Santa Fe Railway Company v. White*, the court held that an action by an employer can be considered materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 126 S. Ct. 2405, 2415, 165 L. Ed. 345, 359, 2006 U.S. LEXIS 4895, *26-27. Under *Burlington Northern*, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*, 126 S. Ct. 2415. As the denial of overtime is sufficient to meet the more stringent test of an adverse job action for Plaintiff's discrimination claim, there is no doubt that it is also sufficient under *Burlington Northern*.

Finally, Plaintiff can establish a causal connection between his complaint to the EEOC and the denial of overtime. Following the resolution of Plaintiff's first EEOC charge, Plaintiff was paid for overtime hours for which he was denied, and was assured that he would be permitted to work the same schedule as all of the other non-production workers on the second shift. However, this promise was not kept, and Plaintiff was never permitted to work the overtime that was allowed to other, non-production workers. Such denial of the promises made to Plaintiff immediately after the resolution of his prior claim supports a claim for temporal proximity to establish causation. "[T]emporal proximity may provide an evidentiary basis from

which an inference of retaliation can be drawn" by the factfinder." *Moore v. City of Philadelphia*, 461 F.3d 331, 352 (3rd Cir. 2006). In cases where the adverse job action occurs rapidly after the protected activity, temporal proximity is sufficient to establish causation. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3rd Cir. 1989). Accordingly, Plaintiff has adduced sufficient evidence to set forth a claim for retaliation.

Plaintiff's claim for retaliation is also subject to the burden-shifting framework of *McDonnell Douglas*. *See e.g., Brown v. The Boeing Company*, 468 F.Supp. 2d 729 (E.D. Pa. 2007) (Robreno, J.). Plaintiff's argument on this issue is identical to that made regarding his claim for discrimination, which he incorporates herein.

## IV. Conclusion

In light of the foregoing, Plaintiff, Justus Chestnut, respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

TIMOTHY M. KOLMAN AND ASSOCIATES

By: /s/ Rufus A. Jennings
Rufus A. Jennings, Esquire
Pennsylvania Attorney Identification No. 93030
Attorney for Plaintiff
225 North Flowers Mill Road
Langhorne, PA 19047
Phone: (215) 750-3134
Fax: (215) 750-3138
Email: rjennings@kolmanlaw.net

March 7, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTUS CHESTNUT | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 06-4921 |
| GENERAL MOTORS CORPORATION | |
| Defendant. | |

**CERTIFICATE OF SERVICE**

I, Rufus A. Jennings, Esquire, do hereby certify that on the date set forth below, I caused to be served a true and correct copy of Plaintiff's Response to Defendant's Motion for Summary Judgment to Defendant by mailing same, first class mail, postage prepaid upon the following individuals:

Wayne C. Stansfield, Esquire
Reed Smith
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Bridget B. Romero, Esquire
Lathrop & Gage
2345 Grand Blvd.
Suite 2800
Kansas City, MO 64108

TIMOTHY M. KOLMAN AND ASSOCIATES

By: /s/ Rufus A. Jennings
Rufus A. Jennings, Esquire

March 7, 2008